Case 04-33402-hdh7 Doc 305 Filed 06/22/05 Entered 06/22/05 10:08:44 Page 1 of 9

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
ENTERED
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PREMIERE NETWORK SERVICES, | § | Case No. 04-33402-HDH-11 |
| INC. | § | |
| | § | |
| Debtor | § | |

## MEMORANDUM OPINION

Came before the Court for hearing, the motion to compel classification of SBC's claim as a secured claim ("Classification Motion"). This memorandum opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district. This matter is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(A), (L) & (O).

I. **BACKGROUND FACTS**

Premiere Network Services, Inc. ("Premiere" or "Debtor") was established in DeSoto, Texas in 1986. The company is certified by the State of Texas as a local telephone company, also known as a "competitive local exchange carrier" providing residential and business customers with local and long distance telephone service in Texas and in several other states.

Southwestern Bell Telephone, L.P., d/b/a SBC Texas ("Southwestern Bell" or "SBC") is an "incumbent exchange carrier" under the Federal Communications Act ("Communications Act") of 1996. Under the Communications Act, Premiere may compete with SBC for local telephone customers. Because SBC controls over ninety

percent of the cables, poles, conduits, switches and other systems Premiere requires to operate, Premiere had to enter into a business relationship with SBC. This relationship is governed by an Interconnection Agreement ("ICA"). Under the ICA, Premier and SBC establish debits and credits based on charges assessed against each other.

Premiere filed its Voluntary Petition under Chapter 11, Title 11 of the United States Code on March 29, 2004. Southwestern Bell filed its proof of claim on August 2, 2004 in the amount of $649,295.69, as a secured claim, based on offset and recoupment rights. On September 20, 2004, the Debtor filed its proposed Plan of Reorganization ("Plan"), where SBC's claim was classified as an allowed secured claim. From time to time during the bankruptcy case, SBC has asserted in motions for relief from the automatic stay that it holds setoff rights.

Over the course of the bankruptcy case, SBC filed two motions to lift the automatic stay to offset credits against its claim, and in April 2005, SBC filed an amended proof of claim accounting for the offsets taken. In its amended claim, SBC asserts that its claim is now unsecured in the amount of $583, 781.63, but "reserves the right to offset any sums against this claim.

### A. SBC's Claim against Premiere

Premiere and SBC directly compete for customers. They have been in dispute since 1997 regarding their obligations under the ICA. Premiere has alleged that SBC failed to perform certain services, provide service records, and pay amounts due to Premiere. The Debtor has also alleged that SBC over-billed, and breached its fiduciary duties owed to Premiere. Southwestern Bell, in turn, had claimed that it was owed approximately $660,000.00 by Premiere.

Premiere filed an action styled *Complaint of Premiere Network Services, Inc. for Resolution of Interconnection Agreement Dispute against SBC Texas* before the Texas Public Utilities Commission ("TPUC"). On February 3, 2004, the TPUC ruled on this complaint, and ordered that the Debtor owed SBC $617,000.00. This order was final as of March 21, 2004. On March 23, 2004, SBC notified the Debtor that based on the ruling, it would terminate services under the ICA. On March 29, 2004, Debtor sought bankruptcy protection.

### B. Premiere's Claims against SBC

Premiere filed an action against SBC in Federal District Court in Corpus Christi, Texas, alleging that SBC owes Premiere over $6 million in claims under the ICA and under other theories. On August 23, 2004, the Federal District Court dismissed this case with prejudice to certain counts but not to others. On November 4, 2004, the debtor filed a Notice of Appeal.

Around November 12, 2004, the Debtor filed a complaint with the TUPC styled *Premiere Network Services Request for "Appropriate Action" Under Attachment 17 Section 10.2*. In this complaint, Premiere alleged that SBC underpaid PM 13 damages by approximately $408,186.76. On November 29, 2004, SBC filed a Motion to Dismiss, to which the Debtor filed a response. This is still pending before the TUPC.

On November 29, 2004, Debtor filed another complaint with the TUPC styled *Complaint of Premiere Network Services, Inc. against SBC Texas and Request for Interim Ruling*, alleging that SBC failed to meet certain performance measures under the ICA, and to provide call detail records. Premiere sought an award of $5,541,925.00. This is also still pending before the TUPC.

### C. *The Debtor's Proposed Plan of Reorganization*

The Plan classifies the SBC claim as an allowed secured claim, separate from all other claims, including non-priority unsecured claims. Non-priority unsecured claims will receive monthly distributions on a pro-rata basis, net of the payment of the SBC allowed secured claim. Under the Plan, the SBC claim is unimpaired. The Plan proposes to pay 100% of SBC's claim with interest at five percent per annum, over a period of sixty months from the closing date of the Plan, in equal monthly installments.[1]

## II. ISSUE

Can a creditor, who asserts that its claim is unsecured, be separately classified under a plan of reorganization when the Debtor asserts pending claims against the creditor arising under the same contract on which the creditor's claim is based, the creditor and the Debtor are business competitors, and the creditor has claimed a right of setoff or recoupment?

## III. ANALYSIS

The Debtor proposes to separately classify SBC's claim from general unsecured claims based on SBC's secured status as a creditor with setoff rights, and based on SBC having a distinct "non-creditor interest" in Premiere's reorganization.

Section 1122 of the Bankruptcy Code (the "Code") controls classification of claims: "[A] plan may place a claim...in a particular class only if such claim...is substantially similar to the other claims...of such class." 11 U.S.C. § 1122(a).

While the Code expressly addresses classification of dissimilar claims together, it does not address the problem of putting similar claims in different classes. *In re U.S. Truck Co., Inc.*, 800 F.2d 581, 585 (6th Cir. 1986). However, a debtor's ability to classify

---

[1] Confirmation of the Debtor's Plan of Reorganization is currently under advisement.

similar claims separately must have limits, otherwise the plan process may be abused. *Id.* at 586.

The Fifth Circuit has made clear that substantially similar claims or those sharing common rights against the estate must be placed in the same class. *In re Greystone III Joint Venture*, 995 F.2d 1274, 1278 (5th Cir. 1991), *cert. denied*, 506 U.S. 821 (1992). Such claims may not be classified separately solely to gerrymander a favorable vote on a plan of reorganization. *Id.* at 1279. However, separate classification is permitted if there are "good business reasons." *In re Briscoe Enters., Ltd. II*, 994 F.2d 1160, 1167 (5th Cir. 1993). Accordingly, this Court has adopted the standards set forth in *Greystone* and in *Briscoe*. *See In re Bernhard Steiner Pianos USA, Inc.*, 292 B.R. 109, 114 (Bankr. N.D. Tex. 2002) (separate classification of unsecured creditor was justified because the creditor was going to be integral to the business of the reorganized debtor, and because there was no evidence of gerrymandering).

A claim is not legally different if the Code has expressly eliminated what would have made it distinct from other claims under state law. *Greystone*, 995 F.2d at 1279. The *Greystone* court held that the trade claims and the deficiency claim which arose statutorily under § 1111(b)(1)(A), and which would have been non-recourse under state law were not legally different to be placed in separate classes. *Id.* The difference was irrelevant because the Code already eliminated the legal distinction between non-recourse and unsecured claims. *Id.* On the other hand, a creditor's claim that may be offset based on the outcome of litigation between the debtor and the creditor is not "substantially similar" to other claims because it may be paid in full before the other claims. *In re Johnson*, 21 F.3d 323, 328 (9th Cir. 1994).

A non-creditor interest in the reorganized debtor meets the "good business reason" standard and justifies separate classification of the creditor's claim. *See* 994 F.2d at 1167. The court in *Briscoe* found a valid business reason to separately classify an unsecured creditor who had a distinct non-creditor interest in the debtor where the relationship was so essential to the continued operations of the reorganized debtor. *Id.* The *Briscoe* court allowed the claims of the City of Fort Worth ("Ft. Worth") to be classified separately from another creditor's deficiency claim because the continued relationship between Ft. Worth and the Debtor where Ft. Worth partially subsidized lease payments to the Debtor was so essential to the Debtor's apartment business. *Id.*

A creditor with a "different stake in the future viability" of the reorganized debtor has a non-creditor interest that may justify separate classification of its claim. *U.S. Truck*, 800 F.2d at 587. For example, the court in *U.S. Truck* separately classified the claims of the union employees ("Teamsters Committee") because they had a "virtually unique" non-creditor interest. *Id.* Rejection of the plan would mean a benefit to them through an ongoing employment relationship. *Id.* Classifying the Teamsters Committee together with other impaired creditors would have prevented the court from considering the affirmative votes of the other impaired creditors. *Id.*

### A. The Present Case

In the present case, section 1122(a) allows separate classification of the SBC claim because it is not "substantially similar" to the other creditors' unsecured claims. Southwestern Bell has legally different rights because it has a secured claim to the extent that its claim is subject to setoff, and because it has a "non-creditor interest" in the Debtor's reorganization.

Section 506 of the Code dictates which claims receive a secured status. "An allowed claim of a creditor...that is subject to setoff under section 553 of this title, is a secured claim...to the extent of the amount subject to setoff...and is an unsecured claim to the extent that the amount so subject to setoff is less than the amount of such allowed claim." § 506(a). And while the Code does not create a right of setoff, it expressly does not alter the setoff rights of parties that arose before commencement of the case. *See* 11 U.S.C. § 553(a).

### B.  *Greystone does not require a different result.*

The present case is distinguishable from *Greystone* because separate classification is based on a state law right of setoff that is recognized and expressly left undisturbed by the Code. *See* 11 U.S.C. § 553(a). The Code specifically provides that a claim subject to setoff is a secured claim. 11 U.S.C. § 506(a). In contrast, in *Greystone*, the debtor's proposed justification for separately classifying a deficiency claim was because it would have been non-recourse under state law. 995 F.2d at 1279. The *Greystone* court disagreed with the debtor. *Id*. It held that deficiency claims are not legally different because the Code has eliminated the state law difference between non-recourse deficiency claims and unsecured claims. *Id*.

Southwestern Bell has legally different rights from the unsecured creditors because its claims may be paid in full before the other creditors, based on the outcome of its litigation against the Debtor. As with the creditor in *Johnson*, SBC has a claim that may be setoff or even exceeded by the Debtor's claims. Therefore, to the extent that SBC's allowed claim is subject to setoff, its claim is secured, its rights are legally

different from the unsecured creditors, and § 1122(a) does not allow classification of SBC together with the unsecured creditors.

Even without a right to setoff, SBC has legally different rights and interests that justify separate classification because there is a good business reason for such classification. In *Bernhard Steiner*, this Court adopted standards set in *Greystone* and in *Briscoe* that separate classification of an unsecured claim is permissible if it is due to a "good business reason" independent from gerrymandering of classes to obtain the affirmative vote needed to confirm the plan. 292 B.R. at 114. Similar to the creditors in *U.S. Truck*, SBC has a distinct non-creditor interest in the reorganized debtor. 800 F.2d at 587. The Teamsters Committee in *U.S. Truck* would have benefited from rejection of the plan because its members would have enjoyed an ongoing employment relationship. *Id.* Evidence presented to the Court shows that SBC directly competes with the Debtor and will likely continue to compete with the successor to the Debtor under the Plan. Thus, as with the Teamsters Committee, SBC has a "different stake in the future viability of the reorganized company." Southwestern Bell will benefit from rejection of the plan and failure of the Debtor's reorganization because these will decrease competition.

### III. CONCLUSION

In sum, under § 1122(a), SBC's claim must be separately classified from general unsecured claims because SBC has legally different rights against the Debtor. Its right of setoff gives SBC a secured status. Furthermore, even if it did not have a secured status, SBC still meets the Fifth Circuit's standard for separate classification because such classification is based on a good business reason that SBC has non-creditor interests distinct from other unsecured creditors. Additionally, there was no evidence presented to

this Court that the purpose of keeping SBC's claim separate is to gerrymander classes to obtain an affirmative vote on the plan.

Accordingly, the Debtor's proposed classification of SBC's claim as a separate class is granted.

Signed this 20 day of June, 2005.

_____
**Honorable Harlin D. Hale**
**United States Bankruptcy Judge**