U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

ENTERED
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PREMIERE NETWORK SERVICES, | § | Case No. 04-33402-HDH-11 |
| INC., | § | |
| | § | |
| Debtor. | § | |

## MEMORANDUM OPINION

Came before the Court for hearing, the Debtor's Second Amended Plan of Reorganization ("Plan"). This memorandum opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district. This matter is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(A), (L) & (O). After several days of hearings on the Plan, the Court took the matter under advisement and now finds that confirmation should be denied based on the Plan's failure to meet the requirements of 11 U.S.C. § 1129.

### I.   BACKGROUND FACTS

Premiere Network Services ("Premiere") is certified by the State of Texas as a local telephone company, otherwise known as a competitive local exchange carrier ("CLEC"). On March 29, 2004, Premiere filed its voluntary petition under Chapter 11, Title 11 of the United States Code. Prior to filing its petition, Southwestern Bell Telephone, L.P. d/b/a SBC TEXAS ("SBC") served as Premiere's primary incumbent exchange carrier ("ILEC"). Under a Master Services Agreement ("MSA") with UTEX Communications Corporation ("UTEX") entered into post-petition, Premiere now utilizes

UTEX to provide its telecommunication network elements. Premiere has continued to operate its business as a debtor in possession and now submits its joint Plan along with UTEX. SBC has voted against the Plan and has objected to confirmation of the Plan on several grounds.

In many ways the Plan is a liquidation. The Plan continues, in large part, the migration of the Debtor's business to UTEX. That process began fairly early in the case pursuant the MSA that was approved by this Court. The Plan contemplates that the Debtor's existing stock will be canceled upon confirmation and new stock will be issued to UTEX in satisfaction of UTEX's administrative claim.

The Plan proposed by the Debtor and UTEX provides for full payment of all Allowed Administrative Claims in cash, or as otherwise agreed, after confirmation on an effective date described in the Plan. The Plan contemplates full payment of Allowed Priority Claims, including Priority Tax Claims over time. The Plan contemplates full payment or return of collateral to Allowed Secured Claims over time and payments pro rata over time in partial satisfaction of Allowed Unsecured Claims. Under the Plan, a Liquidating Trust is created to make distributions and litigate Causes of Action for the benefit of Allowed Claims.

Additionally, each executory contract and unexpired lease to which the Debtor is a party which has not previously been assumed or rejected is deemed rejected unless the Debtor expressly assumes a particular executory contract or unexpired lease before the Effective Date. No additional contracts are assumed under the Plan.

After the Confirmation Date of the Plan, all objections to Claims and all Causes of Action and Avoidance Actions shall be assigned to a Liquidating Trust and prosecuted

by the Liquidating Trustee. The Liquidating Trustee may object to allowance of Claims for which liability, in whole or in part, is disputed for whatever reasons, even if Claims were not scheduled by the Debtor as disputed, contingent or unliquidated. All objections to Claims must be filed within ninety days following the Confirmation Date of the Plan, unless extended by the Bankruptcy Court.

SBC has objected to Confirmation of the Plan on several grounds, including its failure to meet most of the confirmation standards required by the Bankruptcy Code. Therefore, the Court will address each standard in turn.

## II. ANALYSIS

### A. Confirmation Standards

Bankruptcy Code Section 1129 lists the confirmation standards for a plan of reorganization. 11 U.S.C. § 1129(a). The proponent of a plan of reorganization must show by a preponderance of evidence that the requirements of subsection 1129(a) are met. *In re Landing Assocs., Ltd.*, 157 B.R. 791 (E.D.Tex. 1992). The only section of 1129(a) that is not mandatory is 1129(a)(8), which requires that all impaired classes accept the plan. In the case of rejection by an impaired class the court, at the proponent's request, may confirm the plan under the section 1129(b) "cram down" provision. 11 U.S.C. § 1129(b). The plan must, however, comply with all other provisions of section 1129(a).

The Court has a mandatory and independent duty to review the plan for compliance with section 1129. *In re Williams*, 850 F.2d 250, 253 (5th Cir. 1988). In its review, the Court considers the plan in light of the facts and circumstances of the case. *In*

*re D & F Construction*, 865 F.2d 673, 675 (5th Cir. 1989). If the plan does not satisfy the requirements of section 1129(a) and (b), confirmation must be denied.

### B. The Present Plan

*Compliance*

Both the plan and the proponent of the plan must comply with the provisions of Title 11. 11 U.S.C. §§1129(a)(1) - (2). Having reviewed the Bankruptcy Code and considered the facts and circumstances of this case, the Court finds the proponents to be in compliance with provisions of section 1129(a)(1) - (2).

*Good Faith*

The plan must be proposed in good faith and not by any means be forbidden by law. 11 U.S.C. §1129(a)(3); *see also Financial Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 802 (5th Cir. 1997). Good faith in the Chapter 11 plan process is not defined by the Code. Generally speaking, to be proposed in good faith, a plan must "fairly achieve a result consistent with the [Bankruptcy] Code." *In re Block Shim Dev. Co.-Irving*, 939 F.2d 289, 293 (5th Cir. 1991)(citing *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984)). Good faith is a question of fact that must be determined in light of the totality of the circumstances surrounding the bankruptcy filing. *Public Finance Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir. 1983). "Where the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of § 1129(a)(3) is satisfied." *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir.1985).

The Plan Proponents have the burden of proof to show that the plan is proposed in good faith by a preponderance of the evidence. *See, In re T-H New Orleans Ltd. P'ship*,

116 F.3d at 802. A plan may satisfy the good faith requirement even though the plan may not be one that the creditors would themselves design and indeed may not be confirmable. *In re Briscoe Enter., Ltd., II,* 994 F.2d 1160, 1167 (5th Cir.1993), *cert. denied* 114 S.Ct. 550 (1993). Although, as discussed below, the Plan will not be confirmed, the Plan is made in good faith and in observance of law.

### *Payment Approval*

Payments under a plan must be approved by the court. Specifically,

> any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

11 U.S.C. §1129(a)(4). The record before the Court suggests that payments for services or expenses have been disclosed as required by section 1129(a)(4). Court approval of payments for services and expenses is governed by various Code provisions and is contemplated by the proponents' Plan. See, 11 U.S.C. §§ 328, 329, 330, 331 and 503(b). Thus, the proponents have achieved compliance with section 1129(a)(4).

### *Disclosure*

Premiere must disclose the identity and affiliation of any individual proposed to serve as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan. 11 U.S.C. §1129(a)(5)(A). The Plan describes in general terms the proposed operations of the successor to the debtor. Sufficient disclosure has been given.

Premiere must also disclose the identity of any insider that will be employed or retained by the reorganized debtor. *Id.* at §1129(a)(5)(B). The testimony at the

confirmation hearing made clear that no Premiere employees, officers, or other insiders would be retained by Reorganized Premiere. No evidence has been presented to indicate otherwise. The proponents have achieved compliance with section 1129(a)(5).

### *Regulatory Approval*

Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor must approve any such rate change provided for in the plan, or such rate change must be expressly conditioned on such approval. The Plan does not provide for any changes in rates that require regulatory approval of any governmental agency. The proponents have achieved compliance with section 1129(a)(6).

### *Best Interest of Creditors*

To be confirmable, the record must establish that the Plan is in the best interest of all creditors. 11 U.S.C. § 1129(a)(7); *In re Voluntary Purchasing Groups, Inc.*, 222 B.R. 105, 107-108 (E.D. Tex. 1998), *rev'd on other grounds* 252 B.R. 373 (E.D. Tex. 2000). To satisfy the best interest test, the Plan Proponents must prove, *inter alia*, that each creditor that did not vote to accept the Plan is receiving at least as much under the Plan as that creditor would receive in a Chapter 7 liquidation of the Debtor. *In re Briscoe Enters., Ltd., II*, 994 F.2d 1160, 1167 (5th Cir. 1993), *cert denied*, 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993). SBC has rejected the Plan; therefore, it must receive at least as much as it would receive in Chapter 7.

After considering the evidence offered at the hearing, the Court finds that the Plan Proponents have not demonstrated that confirming the proposed Plan is in the best interest of creditors. The Plan Proponents assert that Premiere has no substantial assets to

liquidate, but no persuasive liquidation analysis was offered. The Plan Proponents did not introduce sufficient current financial information to permit the Court to determine whether the test has been satisfied; therefore, the Court cannot reach a best interests conclusion.

Furthermore, the Plan Proponents propose to make payments to creditors some time in the future based on a percentage of profits. The payment stream for such payments is highly speculative. "A judgment regarding whether the best interests test has been met is to be made on the basis of evidence, not assumptions." *Voluntary Purchasing Groups*, 222 B.R. at 108 (citations omitted). The Plan Proponents have failed to establish by a preponderance of evidence that the proposed Plan satisfies the best interest of creditors test. Therefore, they have not met the requirements of section 1129(a)(7).

### *Acceptance by All Impaired Classes*

Not all of the impaired classes have accepted the Plan. The proponents have failed to meet section 1129(a)(8). Were this the only requirement unmet, confirmation could be achieved through section 1129(b) "cram down"; however, as discussed further below, all other provisions have not been met, and cram down is unavailable to achieve confirmation.

### *Treatment of Administrative Expense Claims and Priority Tax Claims*

The treatment of Administrative Expense Claims under Article 6.1.1 of the Plan satisfies the requirements of section 1129(a)(9)(A) - (B) of the Bankruptcy Code. As mentioned below, the Court has serious doubts that the Chapter 11 Administrative Expense Claims will be paid as required by the Code. However, the treatment afforded

such claims meets the Bankruptcy Code's requirements. The treatment of Priority Tax Claims under Article 6.5.1 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

*Acceptance by One Impaired Class*

As discussed on the record at the hearing, Premiere should have been more deliberate in its ballot tallying. However, the Court finds that the final tally submitted at the hearing is correct. SBC's unsecured claim was separately classified in Class 6 and has voted to reject the Plan. Classes 2 and 7 are impaired and have voted to accept the Plan; however, SBC asserts that both classes fail to satisfy Section 1129(a)(10) when the votes of insiders are not counted. The Court finds this to be true as to Class 2; however, after omitting the members of the classes that SBC has shown to be insiders[1], the remaining members of Class 7 overwhelmingly do vote over two-thirds in amount and over one-half in number in favor of the Plan, in satisfaction of section 1126(c). *See*, 11 U.S.C. § 1126(c) ("A class of claims has accepted a plan if such plan has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors . . . that have accepted or rejected such plan."). Thus one impaired class has voted in favor of the Plan.

*Feasibility*

The Plan has not been shown to be feasible. The evidence has not established that the Debtor will obtain an "effective date" or that creditors really will be paid something under the Plan. Section 1129(a)(11) requires that the confirmation of the plan be accompanied by the likelihood of success. Specifically, the Code requires that:

---

[1] SBC has objected to the inclusion of the vote of Debtor's former attorneys, Bickerstaff, Heath & Smiley, being included in class 7 because SBC argues that the lawfirm is an insider. The Court has addressed this issue in a separate memorandum opinion, and finds that the lawfirm is not an insider for voting purposes.

> Confirmation of the plan is not likely to be followed by the liquidation, or the further need for financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. §1129(a)(11). Feasibility is mandatory, and must be determined at the confirmation hearing. The certainty of the plan's implementation is required to be in place at the time of the confirmation hearing. *In re Sis*, 120 B.R. 93, 98 (Bankr.N.D.Ohio 1990). The burden of proving feasibility belongs to the proponents of the plan. *In re Lakeside Global II, Ltd.*, 116 B.R. 499, 505 (Bankr.S.D. Tex. 1989).

"Effective date" is not defined in the Code. As a result, courts have debated the proper rule for defining the effective date. *See, In re Jones*, 32 B.R. 951, n.13 (Bankr.D.Utah 1983) (discussing whether effective date should be reasonably tied to the date of confirmation or the date of final order and adopting "a rule of reason"). Courts that have taken the approach that the effective date should be close to confirmation have cited the importance of the effective date to confirmation. *Id.*

The Plan defines the effective date at Article 2.23:

> The first date on which the Confirmation Order is no longer subject to appeal or certiorari proceeding, provided no such appeal or certiorari proceeding is then pending and sufficient funds exist for the Debtor to fund the Administrative Claims Reserve; provided, however, that the Effective Date must occur on a date within 120 days of the Confirmation Date or the Debtor shall be in default under the Plan.

Without appeal, a Confirmation Order would be final after 10 days. Fed. R. Bankr. P. 8002. However, appeal is almost certain in this case. This bankruptcy has been surrounded by litigation from all sides. SBC has all but assured this Court in the

confirmation hearing that if this Plan is confirmed there will be an appeal. Resolution of an appeal within the 120-day period set forth by the Plan is unlikely.[2]

It would be possible to craft an outside date that provided for the possibility of appeal. However, the outside date should not be established in an effort to buy time to comply with the other provisions of § 1129. *In re Potomac Iron Works*, 217 B.R. 170 (Bankr.D.Md. 1997), dealt with the issue of whether a plan could define the effective date to be <u>one year</u> from the date of confirmation. In *Potomac*, the feasibility of debtor's plan was tied to accounts receivable that were projected by the debtor to require additional time to collect. That plan defined the effective date as the one-year anniversary of the 15th calendar day after the finalization of the confirmation order. *Id.* at 171. The court held that allowing for the exhaustion of an appeal is reasonable "in recognition of a prospective lender's reluctance to advance funds until the appeal period has passed." *Id.* at 174 (citing *In re Wonder Corp. of America*, 70 B.R. 1018, 1020-21 (Bankr.D.Conn.

---

[2] After the conformation hearing was commenced, the Plan Proponents filed a motion to modify certain provisions of the Plan, including the language of Article 2.23. The proposed modification provides:

> 2.23 Effective Date: The first business date ~~on which the Confirmation Order is no longer subject to appeal or certiorari proceeding, provided no such appeal or certiorari proceeding is then pending~~ following the tenth day (as calculated in accordance with Bankruptcy Rule 9006(a)), after the Confirmation Date, on which (a) the Confirmation Order is not stayed, and (b) sufficient funds exist for the Debtor to fund the Administrative Claims Reserve; provided, however, on a date to occur not later than 60 days following the successful interconnection between Reorganized Premiere under the existing interconnection agreement between Premiere and Pacific Bell to serve customers throughout the state of California (the "Outside Date"); provided that the Effective Date must occur on a date within 120 days of the Confirmation Date or the Debtor shall be in default under the Plan.

SBC objected to the proposed modification because it was filed after the confirmation hearing had begun, it made material modifications to the Plan, and the creditors were not able to review the changes prior to voting. The proposed modification to Article 2.23 attempts to address some of the objections to the Plan's open-ended Effective Date, by taking out the language regarding appeal of the Confirmation Order. However, it still leaves open-ended the questions of when the necessary funds will be available to fund the Administrative Claims Reserve, if and when a successful interconnection can be accomplished by Reorganized Premiere in California under the Debtor's existing interconnection agreement, and whether any of this can be accomplished within 120 days given the objections raised by SBC and the ultimate litigation that will arguably need to be brought by the parties.

1987)). However, the court found, that the debtor's purpose of fixing such an extended effective date was "not to exhaust the appeal process, but solely to buy extra time to collect account receivables." *Id.*

Importantly, under the present Plan the effective date, as filed and under the proposed modification, is further conditioned on sufficient funds. The proponents need cash to pay administrative expenses, as required by § 1129. However, they do not have the funds presently. The confirmation hearing made clear that obtaining the sufficient funds required by the Plan and the Bankruptcy Code will depend in large part, on whether Reorganized Premiere can assume the Debtor's California contracts. SBC argues that these contracts have expired. The record on the California contracts is mixed. The contracts are certainly in question, replacing the Debtor with UTEX is not a given, and a transfer from Premiere to UTEX will take time. Whether the California contracts can be assumed, and if so, whether they can provide sufficient funds is too speculative to say that the Plan is feasible.

Courts are typically reluctant to confirm a plan that shifts risk to the claimants. The plan of reorganization must provide the claimants with at least as much as they would receive in liquidation. Although the present Plan proposes to pay claimants required to be paid on the effective date, extending and creating uncertainty as to the effective date forces these priority claimants to subsidize the proposed joint Plan and bear the risks of failure. See, *In re Krueger*, 66 B.R. 463 (S.D.Fla. 1986); *In re European Industrial Development Co., LLC*, 288 B.R. 572 (Bankr.N.D.Ca. 2003).

Accordingly, the Plan is found and determined not to be feasible. The Debtor's ability to satisfy its financial obligations under the Plan, and the payment requirements of

§ 1129 is not just speculative, but is so contingent on factors beyond its control (such as resolution of appeal of the confirmation order, implementation of the effective date, litigious claims by and against SBC, the assumption of allegedly expired contracts that will most likely spur further litigation, and collection of enough funds to pay administrative expenses) that completion of the Plan is unlikely. Consequently, confirmation of the Plan is likely to be followed by the liquidation or the need for further financial reorganization of Reorganized Premiere. Thus, the proponents have failed to meet the requirements of section 1129(a)(11).

*Payment of Fees*

All fees payable under 28 U.S.C. § 1930, as determined by the Court, have been paid or will be paid then due, pursuant to Article 6.1.2 of the Plan, thus satisfying the requirements of 11 U.S.C. § 1129(a)(12).

*Continuation of Retiree Benefits*

The Debtor has no obligation to pay "retiree benefits." The proponents have achieved compliance with section 1129(a)(13).

### III. CONCLUSION

For the reasons stated herein, the Court will not confirm the Plan. The Court will enter a separate order denying confirmation.

Signed this 1st day of July, 2005.

_____
**Honorable Harlin D. Hale**
**United States Bankruptcy Judge**